Note.—Reported in 206 N. W. 475. See, Headnote (1), American Key-Numbered Digest, Appeal and Error, Key-Nos. 294(1), 757(3), 3 C. J. Secs. 908, 1589; (2) Mortgages, Key-No. 295(1), 27 Cyc. 1378, 1379; (3) Deeds, Key-No. 65, 18 C. J. Secs. 123, 542; (4) Deeds, Key-Nos. 54, 64, 18 C. J. Secs. 94, 119; (5) Mortgages, Key-No. 295(1), 27 Cyc. 1378; (6) Mortgages, Key-No. 295(2), 27 Cyc. 1379, 1380.

On delivery of deed as essential to validity, see note in 9 L. R. A. (N. S.) 945.

---

RICE BROTHERS, Respondent, v. BANK OF BUFFALO
COUNTY, Appellant.

(206 N. W. 693.)

(File No. 5333.   Opinion filed December 18, 1925.)

1.   **Money Received—Fraud—Bank Held Not Chargeable With Fraud Because Drafts Drawn on Commission Merchant to Whom Cattle Consigned in Excess of Sum Received for Cattle.**

   Where cattle were consigned to commission merchant, and drafts drawn on it by bank, acting for shipper, payable to bank, bank held not chargeable with fraud because amount of drafts exceeded sum realized on sale of cattle, since commission merchant had no right to rely on banker's opinion of value as a representation of fact.

2.   **Banks and Banking—Actions—Action for Money Had and Received Held not to Lie Against Bank Drawing Draft on Consignee of Cattle for Sum in Excess of Value of Cattle.**

> Where bank, acting for shipper of cattle, drew drafts on consignee, held, that, there being no fraud in drawing draft in excess of value of cattle, title to fund realized from such draft was in shipper, and action by consignee for money had and received does not lie against bank.

3. Banks and Banking—Principal and · Agent—Drawee Held Not Entitled to Question Payee's Authority to Draw and Sign Drafts in Name of Drawer.

> Where shipper of cattle, acting through bank, drew drafts on consignee payable to bank, consignee seeking to recover excess of amount of draft over sum received for cattle, cannot question bank's authority to sign buyer's name to draft, so long as buyer did not object thereto.

Appeal from Circuit Court, Buffalo County; Hon. FRANK B. SMITH, Judge.

Action by Rice Bros. against the Bank of Buffalo County, Gann Valley, S. D. From the judgment for plaintiff and order denying new trial, defendant appeals. Reversed.

*Brown & Brown,* of Chamberlain, for Appellant.

*Null & Royhl,* of Huron, for Respondent.

Appellant cited: Bower v. Jones, 26 S. D. 414, 128 N. W. 470; First National Bank v. Burkham, 32 Mich. 328; Citizens' Bank v. Schwarzchild, 23 L. R. A. (N. S.) 1092; National Exchange Bank v. Ginn, 33 L. R. A. (N. S.) 963; Spokane & E. Trust Co. v. Huff, 33 L. R. A. (N. S.) 1023; Varney v. Monroe National Bank, 13 L. R. A. (N. S.) 337.

Respondent cited: Union Stock Yards Nat'l Bank v. Gillespie, 137 U. S. 411, 34 L. ed. 724; Union Stock Yards Nat'l Bank v. Moore, 25 C. C. A. 150, 49 U. S. App. 153, 79 Fed. 705; Anderson v. Kissam, 35 Fed. 699; Bank of Guntersville v. Crayter, 199 Ala. 599, 75 So. 7; Kenney v. Bank of Italy, 33 Cal. App. 515, 165 Pac. 735; Clemmer v. Drovers Nat'l Bank, 157 Ill. 206, 41 N. E. 728; Cable v. Iowa State Savings Bank (Iowa), 190 N. W. 262; Alexander v. Security Bank & Trust Co. (D. C.), 273 Fed. 258.

BURCH, C. During the year 1920, and for a number of years prior thereto, C. I. Jones was engaged in buying cattle. He would go out through the country around Gann Valley, S. D., buying a few head here and there of the farmers until he would have enough to load one or more cars. The sellers would bring

the cattle to Gann Valley, where they would be delivered and settled for. In settling for the cattle Jones would draw his check on the Bank of Buffalo County, defendant. He would then load the cattle purchased and consign them to plaintiff, Rice Bros., a corporation doing a live stock commission business at Sioux City, Iowa, and immediately draw a draft on plaintiff payable to defendant bank. The bank, in handling the transactions for Jones, would pay his checks, and, when the draft was drawn, would deposit the amount of the draft to the credit of Jones and send the draft to its correspondent bank, the Live Stock National Bank in Sioux City. The Live Stock National Bank would present the draft to Rice Bros. for payment and when paid would credit defendant bank with the amount received. Jones did not always draw and sign the draft in person, but sometimes the cashier of the defendant, F. E. Swartout, would draw the draft and sign the name of Jones to the draft, with the initial F under Jones' name. In this manner he kept up his deposit in the bank from which his checks were paid.

On November 16, 1920, Jones made a shipment of cattle to plaintiff, and a draft for $2,500 in favor of defendant was drawn on plaintiff. This draft was paid on presentation, by direction of W. J. Downey, who was at the time vice president and secretary treasurer of plaintiff, and the person who had charge of its cattle sales department. At the time he directed payment of this draft he knew that the cattle had arrived in the stock yards at Sioux City, had seen the cattle or part of them, and assumed that there were enough cattle to cover the draft. On November 27th a draft for $3,500 was drawn, and at that time a further shipment of two carloads of cattle was made by Jones to plaintiff. The draft was presented for payment after Mr. Downey knew that the cattle were in the stock yards, but he says he had not then personally inspected them. However, he directed the draft to be paid, which was done and the proceeds placed to the credit of the defendant at the Live Stock National Bank. Plaintiff's officers and witnesses were unable to tell how much was realized on each of these two shipments, but they agreed in the statement that the total net amount realized on both shipments was $2,222.57 less than the amount of the two drafts. The details of both transactions were carried on to the ledger account of the plaintiff with

Jones. On February 2, 1921, plaintiff drew on Jones for this amount. Jones did not deny his liability, but was unable to pay the draft. The draft not being paid, plaintiff brought this action against defendant to recover $2,222.57 for money had and received, on the theory that the bank intentionally drew the drafts for $2,500 and $3,500, respectively, for sums which it knew to be in excess of the value of the cattle shipped, and did so designedly and fraudulently with intent fraudulently to procure money from plaintiff, and on the further theory that Swartout, the cashier of the bank, had no authority to sign Jones' name to the drafts, thereby rendering the drafts void and defendant liable for money received thereon. At the close of plaintiff's case, and again at the close of all the evidence, defendant moved for a directed verdict, which motion was denied. Plaintiff then moved the court to direct a verdict in its favor. Before any ruling was made on this motion, defendant requested the court to submit the case to the jury under instructions to be settled by the court and given to the jury as prescribed by the rules of court. Defendant's request was denied and plaintiff's motion to direct a verdict in its favor was granted, to which ruling defendant excepted. The court then figured interest on plaintiff's demand and wrote a verdict in plaintiff's favor for $2,404.07, which was signed and returned under the direction of the court. Judgment was entered upon the verdict, and from such judgment and an order denying a new trial this appeal is taken.

There is considerable evidence concerning the manner of handling other shipments tending to show that these two were handled in the same manner; also evidence of a steady decline in the cattle market and evidence of defendant's authority to draw the two drafts and good faith in doing so but the foregoing is sufficient to present the issues involved in determining the two assignments of error considered by us; namely, that the court erred in directing a verdict for plaintiff and in overruling defendant's motion for a new trial, and such other evidence need not be set out in this opinion.

[1, 2] The fraud complained of does not consist of any oral representations nor any written representations other than the two sight drafts in payment of two shipments of cattle. The cattle were shipped and arrived in the yards at Sioux City consigned

to plaintiff and could have been inspected by plaintiff before the draft was honored. If any representations are to be implied from the act of drawing the drafts, they cannot be more than that the cattle are consigned to the drawee and will arrive in due time to drawee's disposal. If anything is to be inferred from the amount of the draft, it can be no more than an opinion of the drawer that the cattle are of that value. That a banker's opinion of the value of cattle on the Sioux City market, made a day or two before they are to be sold to a commission merchant selling cattle on that market daily and communicated to him on the day of sale, could have influenced him, is unbelievable. That he had no right to rely on such opinion as a representation of fact is too elementary to require the citation of authorities. The evidence falls far short of establishing fraud. The basis of plaintiff's cause of action is fraud. Inasmuch as there was no fraud on the part of appellant bank, the title to the fund is in Jones, and not in respondent; therefore an action for money had and received will not lie against appellant, and it becomes unnecessary to consider whether appellant applied the fund on Jones' overdraft, or whether the fund was checked out by Jones prior to the time that appellant bank was advised of the shortage.

[3] However, plaintiff contends that defendant had no authority from Jones to draw the drafts, and consequently it can recover of defendant for money had and received. There is a conflict of testimony on the question of the authority of defendant to draw the drafts, which, if it were material, would require the submission of the question to the jury. But where is plaintiff concerned in the authority of the bank to sign Jones' name? Jones is not complaining. True, he may have been a willing witness for plaintiff, but he has never commenced an action against either plaintiff or defendant; neither has he denied his liability to plaintiff by reason of the transaction. The fallacy of plaintiff's position in regard to the invalidity of the drafts is apparent, when it seeks to recover, not the full amount of the money paid on the drafts, but the difference between the amount paid and the value of the cattle. Plaintiff recognizes the validity of the drafts to draw the money due Jones for his cattle, but denies their validity to overdraw his account. Plaintiff received Jones' cattle and paid for them by honoring the drafts, Jones got the money and noth-

ing transpired whereby any of the parties were in a different position than they would have been if Jones had signed the drafts in person. If no express authority was given by Jones to the bank, his action in acquiescing in the manner of payment for his cattle, in making no objection to the sale, in receiving the money through the defendant's acts, and admitting his liability for the balance due, amounts to a ratification. Plaintiff has shown no interest in the transactions between defendant and Jones entitling it to bring an action against defendant by reason thereof; nor has it shown that it has been prejudiced by reason of defendant's lack of authority to draw the drafts if such is a fact.

The trial court erred in directing a verdict for plaintiff. The judgment and order overruling the motion for a new trial are reversed.

DILLON, J., absent and not sitting.

Note.—Reported in 206 N. W. 693. See, Headnote (1), American Key-Numbered Digest, Money Received, Key-No. 7, 27 Cyc. 866; (2) Banks and Banking, Key-No. 90, 7 C. J. Sec. 234; (3) Banks and Banking, Key-No. 90, 7 C. J. Sec. 234.